IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

GARRY ALAN ULLAND,
  Petitioner,

vs.         Case No.:  5:15cv111/MW/EMT

WARDEN R. COMERFORD,
  Respondent.
_____/

## REPORT AND RECOMMENDATION

  This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 10).  Respondent filed an answer and relevant portions of the state court record (ECF No. 19).  Petitioner filed a reply (ECF No. 22).

  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of

the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.   BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 19).[1]   Petitioner was charged in the Circuit Court in and for Bay County, Florida, Case No. 2009-CF-2652, with one count of second degree murder (Ex. A at 6).   Following a jury trial, he was found guilty as charged (Ex. A at 56, Exs. B, C, D, E).   On June 24, 2010, Petitioner was sentenced to twenty-five (25) years of imprisonment, with pre-sentence jail credit of 306 days (Ex. A at 62–67).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D10-3570 (Ex. I).   The First DCA affirmed the judgment per curiam without written opinion on October 31, 2011, with the mandate issuing November 16, 2011 (Exs. K, PD2).   Ulland v. State, 73 So. 3d 765 (Fla. 1st DCA 2011) (Table).   Petitioner did not seek further review.

On March 11, 2012, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D12-1177 (Ex. L).   On March 28, 2012, the First DCA

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 19).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

dismissed the petition, citing <u>Baker v. State</u>, 878 So. 2d 1236 (Fla. 2004) (reiterating that the extraordinary writ of habeas relief cannot be used to litigate issues that could have been or were raised on direct appeal or in post-conviction motions) (Exs. M, PD2).  <u>Ulland v</u>. State, 135 So. 3d 298 (Fla. 1st DCA 2012) (Mem).  The First DCA denied Petitioner's motion for rehearing on May 24, 2012 (*id.*).

On March 21, 2012, Petitioner filed a motion for post-conviction relief in the state circuit court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. N at 1–68).  In an order rendered June 5, 2012, the state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion within thirty days (*id.* at 69).  Petitioner filed an amended motion on June 19, 2012 (*id.* at 74–94).  In an order rendered August 21, 2012, the state circuit court again struck the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion within thirty days (*id.* at 95–96).  Petitioner filed a second amended motion on September 13, 2012 (*id.* at 97–130).  Petitioner then sought leave to amend his second amended Rule 3.850 motion, and the court granted his request (*id.* at 133–37).  Petitioner filed a third amended Rule 3.850 motion on April 2, 2013 (*id.* at 144–64).  In an order rendered June 18, 2013, the state circuit court struck the amendment as facially insufficient, without prejudice to Petitioner's filing an amended motion within thirty days (*id.* at 180–81).  Petitioner filed a fourth amended Rule

3.850 motion on July 4, 2013 (Ex. O at 185–288). The state circuit court denied the motion in part on November 26 2013, and directed the State to respond to two claims (*id.* at 294–316). Following the State's response, the circuit court entered a final order denying the fourth amended Rule 3.850 motion (Ex. R at 685–92). Petitioner appealed the decision to the First DCA, Case No. 1D14-2431 (Ex. S). The First DCA affirmed the decision per curiam without written opinion on January 22, 2015, with the mandate issuing February 17, 2015 (Exs. U, PD2). Ulland v. State, 156 So. 3d 1085 (Fla. 1st DCA 2015) (Table). Petitioner sought review in the Supreme Court of Florida, Case No. SC15-520 (Exs. V, PD2). On March 24, 2015, the state supreme court dismissed the petition for lack of jurisdiction (*id.*). Ulland v. State, 163 So. 3d 516 (Fla. 2015).

During the pendency of the Rule 3.850 proceeding, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D13-4133, alleging ineffective assistance of appellate counsel (Ex. W). The First DCA denied the petition on the merits on September 13, 2013 (Exs. X, PD2). Ulland v. State, 121 So. 3d 1140 (Fla. 1st DCA 2013) (Mem). The court denied Petitioner's motion for rehearing on January 17, 2014 (*id.*). Petitioner sought review in the Supreme Court of Florida, Case No. SC14-187, but the state supreme court dismissed the petition for lack of jurisdiction (Exs. Y, PD2). Ulland v. State, 134 So. 3d 452 (Fla. 2014) (Table).

On March 2, 2014, still during the pendency of the Rule 3.850 proceeding, Petitioner filed a "'Pre-hearing discovery 3.850 et seq. of (h)' Motion to Compel Production of Police Reports" (Ex. Z at 1–37).  The state circuit court construed the motion as a petition for writ of mandamus, seeking an order compelling the State Attorney's Office and the Bay County Sheriff's Office to produce, pursuant to Florida's Public Records Act, certain records and police reports related to Petitioner's criminal case (*id.* at 38–39).  On April 7, 2014, the state circuit court dismissed the mandamus petition without prejudice (*id.*).  Petitioner appealed the decision to the First DCA, Case No. 1D14-2040 (Ex. Z at 40–42; Ex. AA).  The First DCA affirmed the decision per curiam without written opinion on November 4, 2014, with the mandate issuing January 16, 2015 (Exs. CC, PD2).  Ulland v. State, 155 So. 3d 344 (Fla. 1st DCA 2014) (Table).  Petitioner sought review in the Supreme Court of Florida, Case No. SC15-172 (Ex. DD).  On February 3, 2015, the state supreme court dismissed the petition for lack of jurisdiction (Exs. DD, PD2).  Ulland v. State, 160 So. 3d 901 (Fla. 2015) (Table).

Petitioner filed the instant federal habeas action on May 19, 2015 (ECF No. 1).

After Petitioner filed his § 2254 petition, he filed a motion to correct illegal sentence in the state circuit court, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. GG).  The circuit court summarily denied the motion in an

order rendered November 23, 2015 (Ex. HH).  Petitioner appealed the decision to the

First DCA, Case No. 1D15-5625, but the First DCA affirmed the decision per curiam

without written opinion on February 9, 2016.  Ulland v. State, No. 1D15-5625, 2016

WL 510225 (Fla. 1st DCA Feb. 9, 2016) (unpublished).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an

application for a writ of habeas corpus in behalf of a person in custody pursuant to the

judgment of a State court" upon a showing that his custody is in violation of the

Constitution or laws of the United States.  As the instant petition was filed after April

24, 1996, it is subject to the more deferential standard for habeas review of state court

decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death

Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In

relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits in
> State court proceedings unless the adjudication of the claim–
> > (1)  resulted in a decision that was contrary to, or involved
> > an unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or
> > (2)   resulted in a decision that was based on an
> > unreasonable determination of the facts in light of the evidence
> > presented in the State court proceeding.

28 U.S.C. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which

---

[2] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). "Clearly established Federal law, includes only the holdings, as opposed to the dicta, of the Supreme Court's decisions." Woods v. Donald, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) (citation omitted).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State

court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.  However, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* Woods, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court.") (internal quotation marks and citation omitted).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697

n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, *supra* at 1291 (citing Richter).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Richter, 562 U.S. at 102; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable

application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see, e.g., Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by

clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").   The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision.  *Id.*

Only if the federal habeas court finds that the petitioner satisfied § 2254(d) does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

III.   EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, *see* 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  Duncan v. Henry, 513 U.S. 364,

365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  <u>Duncan</u>, 513 U.S. at 365–66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); <u>Picard</u>, 404 U.S. at 277–78.

The Supreme Court has provided lower courts with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In <u>Picard v. Connor</u>, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," <i>id.</i>, 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  <u>Anderson v. Harless</u>, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In <u>Anderson</u>, the habeas petitioner was granted relief

by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing <u>Sandstrom v. Montana</u>, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  <u>Anderson</u>, 459 U.S. at 7.  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim.  *Id.*, 459 U.S. at 7 & n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in <u>Duncan v. Henry</u>, 513 U.S. 364.  The <u>Duncan</u> Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review

of the issue.[3]  The Supreme Court explained,"[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004). In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Id., 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor
> indeed for petitioners seeking to establish exhaustion.  However, we

---

[3] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

> agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . .  We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302–03 (citations omitted).[4]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement.  After Duncan, however, the Eleventh Circuit has taken a more narrow approach.  For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The Eleventh Circuit specifically noted that the section of the

---

[4] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  Id.

petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . ," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in the petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that the petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 & n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998)

(applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of

decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[5]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.   Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional

---

[5] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*  Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a petitioner's proof of innocence.  *See* McQuiggin v. Perkins, — U.S. —, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013).  As the Court stated in Schlup, "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]."  513 U.S. at 332; *see also* House, 547 U.S. at 537.

Within this framework, the court will review Petitioner's claims.

IV.   PETITIONER'S CLAIMS

   A.   Ground One: "Motion to compel (discovery) production of police report:  911 emergency calls to 2504 Dorothy Ave., Panama City Beach, Fla., 32508."

Petitioner alleges the following facts in support of his claim:

> Calls, reports and 911 responses to Defendant's residence above would serve to prove attacks, assaults, and ER ambulance services were dispatched in response to real threats to life and liberty to spouse (Sara L. Ulland) and second trespass was two weeks prior to incident 08-23-2009, not day before."

(ECF No. 10 at 5).[6]  Petitioner asserts he needed these records from the Bay County Sheriff's Office to substantiate several of his post-conviction claims (*id.* at 6).  He states he presented this claim in a "Motion for Records" and a motion to compel filed in the state circuit court (*see* ECF No. 10 at 5–6; ECF No. 22 at 9–13; ECF No. 22-1, Ex. E).  Petitioner asserts the circuit court denied the first motion in an order rendered on April 2, 2013, and dismissed the second motion on April 7, 2014 (*id.*).  He asserts he appealed one of those decisions to the First DCA, Case No. 1D14-2040, but the appellate court affirmed the lower court's decision (*id.*).  Petitioner states he petitioned for review in the Supreme Court of Florida, Case No. SC15-172, but the court dismissed the petition for lack of jurisdiction (*id.*).

Respondent contends Petitioner never fairly presented this claim to the state courts; therefore, it is unexhausted (ECF No. 19 at 4–7).  Respondent additionally

---

[6] The page references to the parties' pleadings reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

contends the claim raises only state law issues, which do not provide a basis for federal habeas relief (*id.*).

The state court record shows that Petitioner's "Motion for Record" was filed in the state circuit court on March 21, 2013 (Ex. N at 138–41).  Petitioner filed the motion pursuant to Rule 3.220 of the Florida Rules of Criminal Procedure and Florida's Public Records Act, Florida Statutes Ch. 119 (*id.*).  He requested records regarding the assignment of Senior Judge Stewart E. Parsons to preside over his criminal case, and asserted that he needed the records in order to assert a post-conviction challenge to the judicial assignment (*id.*).  The state circuit court denied the motion in an order rendered April 2, 2013, on the following grounds:

> If the Defendant is requesting a copy of materials in his court file, the Defendant must request this information from the Clerk's Office.  The Clerk's Office will then advise the Defendant of copying costs.  If the Defendant is requesting copies of materials from his criminal investigation or defense file, the Defendant must request this information from the State Attorney's Office or the Public Defender's Office.  The Defendant should note that copies of these items are not free.  Prisoners seeking copies of their files pursuant to Public Records Act are not entitled to copies of file without paying for them.  *Roesch v. State*, 633 So. 2d 1 (Fla. 1993).  In order to receive copies of portions of his trial record at public expense, Defendant must first file a Rule 3.850 motion setting forth his alleged grounds for relief.  Only then may he secure those portions of the record relevant to his motion.  *McFadden v. State*, 711 So. 2d 1350 (Fla. 1st DCA 1998); *Dorch v. State*, 483 So. 2d 851 (Fla. 1st DCA 1986).  However, the Defendant does not currently have a motion pending with the Court at this time.

(Ex. N at 142–43).

On March 2, 2014, Petitioner filed a document titled, "'Pre-hearing discovery 3.850 et seq. of (h)' Motion to Compel Production of Police Reports," which the state circuit court construed as a petition for writ of mandamus (*see* Ex. Z at 1–11). Petitioner filed the motion pursuant to Florida's Public Records Act, Florida Statutes Ch. 119, and requested that the post-conviction court compel the production of "database police records, reports, and State Attorney's Office investigative records" created during the period February 14, 2009 through August 31, 2009, and that the court view the records in camera to determine whether they were subject to public disclosure (*id.* at 2–10). Petitioner argued that the records would substantiate Grounds 2, 6, 7, 8, 9, 11, 12, 13, and 15 of his pending Rule 3.850 motion (*id.* at 3). Petitioner argued that he was entitled to the records under Florida's criminal procedural rules, and Public Records Act, and that the State Attorney's Office "was, and still is," obliged to supply him with any record that was favorable to the defense, in accordance with Brady v. Maryland, 373 U.S. 83 (1963), the Fifth, Sixth, and Fourteenth Amendments, and the Florida Constitution (*id.*). Petitioner argued that his trial counsel was ineffective for failing to request production of the records during pre-trial discovery, pursuant to Rule 3.220 of the Florida Rules of Criminal Procedure (*id.* at 3, 4, 7).

The circuit court dismissed the petition on April 7, 2014, without prejudice on

the following grounds:

> The Defendant files the instant motion requesting that the Court order
> the State Attorney's Office and the Bay County Sheriff's Office
> to produce certain records and police reports in his case.  He also requests
> an "in camera" inspection for the court to determine the portions of the
> records subject to disclosure.  Although he cites to chapter 119, the
> Defendant has not alleged that he has formally requested specific records
> from an official under the Public Records Act and been denied access to
> such records in order to be entitled to a court order compelling such
> disclosure.  *See Poole v. City of Port Orange*, 33 So. 3d 739 (Fla. 5th
> DCA 2010) ("To state a cause of action for mandamus, a party must
> allege a clear legal right to performance of the act requested, an
> indisputable legal duty, and the lack of an adequate remedy at law.").
> Further, he is not entitled an "in camera" inspection by the Court
> regarding any public records request until an agency concludes that the
> requested records are confidential or otherwise subject to an exemption
> under the law.  *See Ingram v. State*, 39 Fla. L. Weekly D412 (Fla. 5th
> DCA Feb. 21, 2014).  As the Defendant has not indicated that he
> previously sought records to which he has a legal right and was denied
> access to them, he is currently not entitled to relief by way of mandamus.
> *Cf. Gilliam v. State*, 996 So. 2d 956 (Fla. 2d DCA 2008) (holding that
> the defendant's petition for writ of mandamus was sufficient, where the
> facts were sufficient to demonstrate precisely what the Defendant was
> seeking from the clerk but had not received, and his request was
> substantiated by the attachments of his request to the clerk and the
> clerk's response).

(Ex. Z at 38–39).  Petitioner appealed the order to the First DCA, Case No. 1D14-

2040 (Ex. Z at 40–41, 57–58; Ex. AA).  The First DCA affirmed the lower court's

decision without written opinion (Ex. CC).  Petitioner petitioned for review in the

state supreme court, Case No. SC15-172, but the court dismissed the petition for lack of jurisdiction (Ex. DD).

Petitioner's claim concerns the state court's denial of his post-conviction discovery requests.  It is well established in the Eleventh Circuit that a prisoner's challenge to the process afforded him in a state post-conviction proceeding does not constitute a cognizable claim for habeas corpus relief, because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself.  *See* Alston v. Dep't of Corr., Fla., 610 F.3d 1318, 1326 (11th Cir. 2010) (holding that habeas petitioner's claim—that the state post-conviction court acted unreasonably when it determined he was competent to waive his post-conviction proceedings and that his waiver was valid—was not cognizable on federal habeas review; "[T]he state court finding that Alston was competent to waive his post-conviction proceedings concerns the state's application of its own post-conviction procedure, not the legality of Alston's detention."); Carroll v. Sec'y, DOC, Fla. Attorney Gen., 574 F.3d 1354, 1366 (11th Cir. 2009) (holding that habeas petitioner's claim—that the state court violated his due process rights when it summarily denied his post-conviction claim without an evidentiary hearing—did not state a claim on which federal habeas relief could be granted); Quince v. Crosby, 360 F.3d 1259, 1261–62 (11th Cir. 2004) (explaining that "while habeas relief is available to address

defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (holding that habeas petitioner's claim that errors in Rule 3.850 proceeding violated his right to due process did not state a basis for habeas relief because the claim "[went] to issues unrelated to the cause of petitioner's detention.").  As the Eleventh Circuit explained in Alston:

> Federal habeas relief is available to remedy defects in a defendant's conviction and sentence, but "an alleged defect in a collateral proceeding does not state a basis for habeas relief." Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004); see also Carroll v. Sec'y, DOC, 574 F.3d 1354, 1365 (11th Cir. 2009) (collecting cases), cert. denied, — U.S. —, 130 S. Ct. 500, 175 L. Ed. 2d 355 (2009).  There is a valid reason behind this principle: "[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment— i.e., the conviction itself—and thus habeas relief is not an appropriate remedy." Carroll, 574 F.3d at 1365.  Furthermore, such challenges often involve issues of state law, and "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992).

Id. at 1325–26.

Here, Petitioner's claim that the state post-conviction court deprived him of due process in the Rule 3.850 proceeding by denying his motion to compel the State Attorney's Office and Bay County Sheriff's Office to produce certain records in order to substantiate his post-conviction claims, challenges only the state court's application

of its own criminal procedural rules and public records laws, not the legality of Petitioner's detention. Therefore, it does not state a basis for federal habeas relief. *See, e.g.*, Broxton v. Crews, No. 5:12cv183/MMP/CJK, 2014 WL 631663, at *12 (N.D. Fla. Feb. 18, 2014) (petitioner was not entitled to federal habeas relief on claim that his due process rights were violated by state court's denial of "Motion to Compel Compliance," in which petitioner sought state court order compelling sheriff's office to provide certain records in response to his public records request (citing Alston, 610 F.3d at 1325–26 and Osborne, 572 U.S. 52)); James v. Culliver, No. CV-10-S-2929-S, 2014 WL 4926178, at *138 (N.D. Ala. Sept. 30, 2014) (federal habeas petitioner's claims regarding state court's denial of requests for discovery and continuances of evidentiary hearing in post-conviction proceeding failed to state a claim upon which federal habeas relief may be granted (citing Quince, 360 F.3d at 1262 and Spradley, 825 F.2d at 1568)); Rodriguez v. Buss, No. 10-22692-CIV, 2011 WL 1827899, at *40–41 (S.D. Fla. May 12, 2011) (federal habeas petitioner's due process claims regarding state court's evidentiary rulings during post-conviction evidentiary hearing, and court's denial of discovery requests in post-conviction proceeding, failed to state a cognizable claim for federal habeas relief); Day v. Crosby, No. 8:04-CV-643-T-24MAP, 2005 WL 2043522, at *13 (M.D. Fla. Aug. 25, 2005) (federal habeas petitioner's due process claim regarding state court's failure to respond to his

discovery motion prior to post-conviction evidentiary hearing failed to state a cognizable claim for federal habeas relief).

Moreover, to the extent Petitioner asserts that he had a due process right to the records under Brady, his argument is without merit.  In Brady, the Supreme Court held that due process requires a prosecutor to disclose material exculpatory evidence to the defendant before trial.  Brady, 373 U.S. at 87.  However, the Supreme Court has also concluded that Brady does not apply in the post-conviction context, reasoning that "[a] criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man."  Dist. Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 68–69, 129 S. Ct. 2308, 174 L. Ed. 2d 38 (2009) (reversing the Ninth Circuit's conclusion that a state prisoner had a due-process right to access DNA evidence in a post-conviction proceeding analogous to the right to be provided with exculpatory evidence prior to trial under Brady).  The Supreme Court noted that "nothing in our precedents suggest that [Brady's] disclosure obligation continue[s] after the defendant [is] convicted and the case [is] closed."  Id. at 68.

For the aforementioned reasons, Petitioner is not entitled to federal habeas relief on Ground One.

B.      Ground Three[7]: "P[ost-]C[onviction] #2: Richardson violation: victim's mother testified.  After the 'untestifying' witness moaned, groaned, sobbed, and cried out through the entire episode of emergency room and medical autopsy clippings and photographs shown to jury, she was called to take stand.  Highly prejudicial, causing jury to cry.  Sympathetic!"

Ground Five:  "Combat post-traumatic stress (PTSD) and expert witness not provided; ineffective assistance of counsel.  Combat conditioning of service members before deployment to survive imminent dangers, great bodily harm, and death to self or others, created a mental syndrome that does not respond to reasoning, but a spontaneous reflex indoctrination to suppress any threat encountered, while highly focused on the targeted objective; reason is absent (oblivious) to all, but removing the predacious!"

Ground Six:   "Erroneous manslaughter instructions; ineffective assistance of counsel; no objection.  State must prove an act which caused death, leads jury to convict on (only statute) where State does not have to prove an act which caused death, second degree murder.  Defendant's own spouse testified her husband said, 'He would kill him,' which shows ill will, spite or malice, required for jury to convict of second degree murder."

Ground Seven: "I.A.C. by failing to object and move for a mistrial based upon highly prejudicial comments by victim's spouse!  Wife, Sara Ulland, testified for State, bolstering State's case and theory of second degree murder by providing to jury testimony showing ill will, malice, or spite towards Andrew Werner and Sara L. Ulland, required to prove 2nd degree murder.  Spouse alleged she filed for divorce when the Defendant placed a machete to her throat, and that her husband said he would kill him, showing a propensity for violence."

Ground Eight:   "I.A.C. Counsel failed to file a sufficient motion for judgment of acquittal.  Counsel presented a boilerplate J.O.A. by failing to set forth the proper grounds on which it is based.  It should have been based on same undisputed facts already known:  (1) Defendant is only person to witness episode, (2) we were married, (3) Defendant resided at home, (4) choke marks

---

[7] The court has re-ordered Petitioner's claims for organizational purposes.

around wife's neck, (5) a completely naked man was on her bed, (6) after eviction from home, man returned to enter home from rear, (7) prior threats and attacks."

Ground Nine:  "Prosecutor misconduct, improper comments in closing arguments; failure to object, ineffective assistance of counsel.  Failure of defense counsel to object to prosecutorial misconduct; State bolstering other State witness testimony concerning blood-tainted money in alleged victim's wallet.  No DNA analysis nor prints were introduced into evidence from FDLE, but prosecution sought to accuse Defendant of other criminal activity, that Defendant robbed the alleged victim after beating him.  State tainted money!"

Ground Ten:  "Ineffective assistance of counsel (I.A.C.) for failure to motion [sic] to dismiss on grounds of immunity, Stand-Your-Ground.  Counsel failed to motion the court to dismiss charges based on grounds of immunity under 2005 enacted Stand-Your-Ground law, and home protection statute, newly enacted.  Counsel mentions Defendant's request in his November 2009 motion for bond, item #7, but never allowed a pro se motion to dismiss on immunity claim, nor adopted client's motion nor made any attempt himself."

Ground Eleven:   "I.A.C. failure of counsel to provide compulsory process for defense witnesses in his favor.  Della Hughell, a rebuttal witness to sister's testimony she only heard Eberhard's [the victim] yelling in the road, when in actuality alleged victim came to her house, was refused any assistance.  Other witnesses John Foushe nor Charles Low was [sic] called.  All provided testimony prior to trial which tended to show reasonable doubt victim died of Defendant's forceful eviction and return a second time for re-entry into home."

Ground Twelve:  "I.A.C. failure of counsel to file motion to suppress all evidence and statements made due to illegal arrest.  Fourth Amendment violation of Defendant's home, included a forced entry into home and arrest of the Defendant while still naked, transported handcuffed to Sheriff's Department while under the influence of a 3rd dosage of sleep medication (Ambien) and questioned without counsel, knowledge, or reason why detained, and promised if I spoke to police investigator, all would be over!"

Ground Thirteen:  "I.A.C. for counsel's failure to subpoena the 911 emergency call records and police officer responding as a material witness. This ground is supported by out-of-court statements, interrogatory statements recorded by police (Bay County Sheriff's Office) on the morning of 08-23-2009:  Andrew Werner and Sara L. Ulland both testified that police arrived at the home of Garry A. Ulland and his wife at 2504 Dorothy Ave., Panama City, Beach, two weeks prior to alleged crime on threats to kill the couple; Andrew Werner was transported from property on a second trespass."

Ground Fourteen:  "I.A.C. failure of counsel to motion the court to suppress testimony of spouse:  husband/wife privilege.  Wife's testimony at trial for bolstering State's case by the use of false testimony, hearsay testimony: State prosecutor's usage of subpoena powers of grand jury to overcome the husband/wife privilege violated U.S. Constitution (5), (14), State Constitution may place more rigorous restraints on government intrusion, but it may not place more restrictions on the fundamental rights of State citizens."

Ground Fifteen:  "I.A.C. for failure of counsel to timely file a motion for new trial within 10 days of verdict.  Counsel stated he did not believe State proved its case, but made no motions to preserve the Defendant's right to judicial review of the weight of the evidence, that the jury's verdict is contrary to the applicable law, 776.013 F.S & weight of the evidence presented.  The applicable law to home protection (Stand-Your-Ground) is not synonymous with law of protection of property, which excludes a dwelling."

Ground Sixteen:  "I.A.C. failure of counsel to file a timely motion to disqualify state-attorney-appointed trial judge.  Defendant had five judges. Original judge appointed to case on 08-24-2009, by Judge Joe Grammer; Judge Richard Albritton, whom [sic] resided [sic] at arraignment on 09-17-2009. Judge Albritton resigned from the bench in March of 2010.  A retired judge of the Second Judicial District, family law judge, was assigned to preside over homicide case on 06-21-2010, was not qualified, planted, acted as additional prosecutor, not impartial."

(ECF No. 10 at 31, 33, 35, 37, 39, 41, 43, 45, 47, 49, 51, 53).  Petitioner asserts he raised these claims as Grounds Two, Three, and Five through Fifteen in his fourth amended Rule 3.850 motion (*id.*).

Respondent contends Petitioner procedurally defaulted these claims by failing to present them to the First DCA on appeal of the circuit court's denial of the fourth amended Rule 3.850 motion (ECF No. 19 at 7–10).  Therefore, the claims are procedurally barred from federal review (*id.*).

In response to Respondent's procedural default defense, Petitioner argues that under Rule 9.141(b)(2)(C) of the Florida Rules of Appellate Procedure, appellate briefs are not required to appeal a summary denial of a Rule 3.850 motion; therefore, a petitioner who does not file a brief in an appeal of a summary denial does not waive any issues not addressed in the brief (ECF No. 22 at 3–4, 14–15).  Petitioner contends that since he was not required to file an initial brief, he satisfied the exhaustion requirement (*id.*).  As legal support for his argument, Petitioner relies upon <u>Darity v. Sec'y, Dep't of Corr.</u>, 244 F. App'x 982, 984 (11th Cir. 2007) (unpublished), and federal district court cases citing <u>Darity</u> (*id.*).

The state court record demonstrates that Petitioner presented these claims as Grounds Two, Three, and Five through Fifteen in his fourth amended Rule 3.850 motion (Ex. O at 197–203, 213–85).  The state circuit court summarily denied all of

the claims (Ex. O at 298–316; Ex. R at 685–92).  Petitioner appealed the decision and

<u>chose to file an initial brief</u> (Ex. S).  In that brief, he did not argue any of the issues

presented in Grounds Two, Three, or Five through Fifteen of his fourth amended Rule

3.850 motion (*id.*).  Instead, Petitioner made the following arguments:  (1) his trial

counsel failed to obtain transcripts of all pre-trial depositions of witnesses, (2) his

appellate counsel failed to supplement the record on direct appeal with all of the

evidence admitted at trial (for example, photographic exhibits from the victim's

autopsy), (3) pre-trial media coverage was harmful and prejudicial to the defense, (4)

he was denied meaningful access to the appellate courts, (5) his conviction constituted

an ex post facto violation, and (6) he was denied a fair trial by virtue of the State's

failure to file the charging document, or otherwise notify him of the charge, prior to

his arraignment or trial, which deprived the trial court of subject matter jurisdiction

(*id.*).  At the conclusion of his initial brief, Petitioner argued:

> Plaintiff/Appellant adopts arguments that are within Motion for Rehearing, R. App. P. 9.141 and 9.220, R. Crim. P. 3.850(j), filed on April 3, 2014.  R.O.A. 1D14-2434- T-802-812.
>
> Appellate appeals all 16 motions, 3 strikes of Ground 12, and strikes of 13, 14, and 16 under an abuse of discretion standard.  Grounds 7, 9, 11, 12, 13, 14, 15, and 16 are still in dispute over material facts not of record (not a final order) where judicial labor in the lower court merely determined sufficiency of complaints and did not resolve the underlying controversy between the parties.  Order must complete

judicial labor, and it is not final if it does not resolve by disposing controversy [sic]."

(Ex. S at 8).

In the First DCA, an appellant who files a brief when appealing a summarily denied post-conviction motion is required to address all arguments in his brief that he wishes to preserve for appellate review.  *See* Watson v. State, 975 So. 2d 572, 573 (Fla. 1st DCA 2008); *see also* Cook v. State, 638 So. 2d 134, 135 (Fla. 1st DCA 1994).[8]  In the past, the Eleventh Circuit has interpreted Florida law differently.  In two unpublished opinions issued in 2007, the Eleventh Circuit held that when a Florida defendant does not receive an evidentiary hearing in his Rule 3.850 proceeding and appeals the circuit court's decision denying his motion, he satisfies the federal exhaustion requirement as to all claims raised in his Rule 3.850 motion, even if he files a brief and fails to address each issue in his appellate brief.  *See* Darity, 244 F. App'x. at 984; Cortes v. Gladish, 216 F. App'x 897, 899–900 (11th Cir. 2007) (unpublished).  However, the Florida case upon which the Eleventh Circuit relied in Darity and Cortes, that is, Webb v. State, 757 So. 2d 608 (Fla. 5th DCA 2000), ceased to be the decisional law of the Fifth DCA in 2009.  *See* Ward v. State, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009); *see also* Maxwell v. State, 169 So. 3d 1264, 1265 n.1 (Fla.

---

[8] If an appellant does not file a brief when appealing, which is not the case here, the appellate court is required to investigate all possible means of relief.  *See* Watson, 975 So. 2d at 573 n.1*; see also* Fla. R. App. P. 9.141(b)(2).

5th DCA 2015) (on appeal of lower court's summary denial of Rule 3.850 motion without evidentiary hearing, defendant abandoned two of his three grounds for relief by raising only one ground in his appellate brief) (citing Ward, 19 So. 3d at 1061).

Here, Petitioner's appeal was filed years after Watson was decided and after the law of the Fifth DCA changed.  Further, he chose to file an initial brief in his post-conviction appeal (*see* Ex. S).  Therefore, to obtain appellate review of any claim raised in his summarily denied Rule 3.850 motion, Petitioner was required to raise and fully address the merits of that claim in his appellate brief.  *See* Watson, 975 So. 2d at 573.  As previously discussed, Petitioner's post-conviction appellate brief did not present substantive arguments as to the circuit court's rejection of Grounds Two, Three, and Five through Fifteen of the fourth amended Rule 3.850 motion (*see* Ex. S).  Petitioner's having chosen not to argue that the lower court erred in summarily denying those claims (Grounds Three and Five through Sixteen of his federal habeas petition), he failed to invoke the state court's established appellate review process as to those claims, and thus failed to exhaust them.  *See, e.g.*, Aguilera v. Jones, No. 15-CV-20406-GAYLES, 2016 WL 791506, at *9 (S.D. Fla. Jan. 13, 2016), *Supplemental Report and Recommendation Adopted by* 2016 WL 932808 (S.D. Fla. Mar. 10, 2016); Bolling v. Jones, No. 3:13cv473/MCR/CJK, 2015 WL 6769103, at *14 (N.D. Fla. Oct. 16, 2015), *Report and Recommendation Adopted by* 2015 WL 6758189 (N.D. Fla.

Nov. 5, 2015); Daniels v. Crews, No. 3:13cv149/MCR/EMT, 2014 WL 4409877, at

*9 (N.D. Fla. Sept. 8, 2014); Mitchell v. Crews, No. 3:12cv356/LAC/CJK, 2014 WL

3720829, at *12–15 (N.D. Fla. July 28, 2014); Coleson v. Crews, No.

3:12cv96/MCR/EMT, 2013 WL 1197729, at *35–36 (N.D. Fla. Feb. 4, 2013), *Report

and Recommendation Adopted by* 2013 WL 1197764 (N.D. Fla. Mar. 25, 2013); Solis

v. Tucker, No. 4:10cv3/SPM/CAS, 2012 WL 4478301, at *5 (N.D. Fla. Aug. 29,

2012), *Report and Recommendation Adopted by* 2012 WL 4478782 (N.D. Fla. Sept.

28, 2012); Green v. McNeil, No. 1:09cv204/MP/GRJ, 2011 WL 2790167, at *7 (N.D.

Fla. June 22, 2011), *Report and Recommendation Adopted by* 2011 WL 2790180

(N.D. Fla. July 15, 2011).  *Cf.* Daniels v. Sec'y, Dep't of Corr., No. 6:10cv200-ACC-

KRS, 2010 WL 5297167, at *7 (M.D. Fla. Dec. 20, 2010) (holding that Fifth DCA's

decision in Ward was not applicable to federal petitioner's claim, because his state

post-conviction appeal pre-dated that decision)

Any future attempt to exhaust state remedies would be futile under Florida's

procedural default doctrine, because a second appeal is unavailable, and any further

attempt to raise the claim in another Rule 3.850 motion would be subject to dismissal

as successive.  *See* Fla. R. Crim. P. 3.850(f).  Therefore, Grounds Three and Five

through Sixteen are procedurally defaulted.

Petitioner argues he may obtain federal review of any procedurally defaulted claims under Martinez v. Ryan, 132 S. Ct. 1309 (2012) (ECF No. 22 at 3).   In Martinez, the Supreme Court announced a narrow, equitable, and non-constitutional exception to the holding of Coleman v. Thompson, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (that ineffective assistance of collateral counsel cannot serve as cause to excuse a procedural default) in the limited circumstances where: (1) a state requires a prisoner to raise ineffective-trial-counsel claims at an initial-review collateral proceeding; (2) the prisoner failed to properly to raise ineffective-trial-counsel claims in his state initial-review collateral proceeding; (3) the prisoner did not have collateral counsel or his counsel was ineffective; and (4) failing to excuse the prisoner's procedural default would cause the prisoner to lose a "substantial" ineffective-trial-counsel claim.  *See* Lambrix v. Sec'y, Fla. Dep't of Corr., 756 F. 3d 1246, 1260 (11th Cir. 2014) (citations omitted).  In such a case, the Supreme Court explained that there may be "cause" to excuse the procedural default of the ineffective-trial-counsel claim.  Martinez, 132 S. Ct. at 1319.  However, the Martinez rule is expressly limited to attorney errors in initial-review collateral proceedings: "[T]he holding in [Martinez] does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's

appellate courts."   <u>Martinez</u>, 132 S. Ct. at 1320 (emphasis added).   Here, the procedural default occurred in the appeal from the initial-review collateral proceeding. Therefore, Petitioner cannot benefit from the equitable rule announced in <u>Martinez</u>.

The court also rejects Petitioner's argument that he was not required to exhaust his state court remedies, because there was an absence of available state corrective process (ECF No. 22 at 2).   The State provided a corrective process, specifically, appeal of the circuit court's denial of Petitioner's Rule 3.850 motion.   Petitioner's failure to fully avail himself of that process does not deem it unavailable for purposes of § 2254(b).

Petitioner also claims he is entitled to federal review of his procedurally defaulted claims through the "actual innocence" exception to the procedural bar (ECF No. 22 at 2).   Petitioner appears to argue that if the jury had been presented with certain evidence (discussed below), the jury would have found that he had an affirmative defense to the charge (self-defense, or defense of his wife, Sara Ulland, pursuant to Florida Statutes § 776.012, or defense of his home, pursuant to Florida Statutes § 776.013), or that he was immune from criminal prosecution, pursuant to Florida Statutes § 776.032.

Neither the Supreme Court nor the Eleventh Circuit has decided whether <u>Schlup</u> permits a claim of actual innocence based on "new reliable" evidence of a complete

affirmative defense that renders the conduct of conviction wholly noncriminal and requires acquittal.  *See* <u>Rozzelle v. Sec'y, Fla. Dep't of Corr.</u>, 672 F.3d 1000, 1015 (11th Cir. 2012).

Here, the "new reliable" evidence alleged by Petitioner includes pre-trial deposition transcripts of Sara Ulland and Andrew Werner, and law enforcement reports documenting a response to Petitioner's 911 call two weeks prior to the killing, during which Petitioner reported that Andrew Werner was at Petitioner's home, threatening to kill Petitioner and his wife, Sara Ulland, and law enforcement responded by "trespass warning" Mr. Werner.

Petitioner has not shown that it is more likely than not that no reasonable juror would have convicted him in light of any such evidence.  *See* <u>Schlup</u>, 513 U.S. at 327. The issue of Petitioner's seeking assistance from law enforcement to prevent Mr. Werner from having contact with Petitioner or his wife, Sara Ulland, during the three to four-month period prior to the killing was discussed at Petitioner's trial (*see* Ex. B at 62–65; Ex. C at 161, 190–91, 202–08; Ex. D at 332–39, 404–05).  Additionally, the jury was instructed on the affirmative defenses of self-defense, defense of others, and defense of property (Ex. E at 522–33).  Petitioner has not shown that it is more likely than not that no reasonable juror would have convicted him in light of additional evidence of his requests for assistance from law enforcement to prevent Mr. Werner

from having contact with him or his wife.  Therefore, Petitioner has failed to demonstrate he is entitled to federal review of his procedurally defaulted claims through the "actual innocence" gateway.

> C.    Ground Two:  "(I.A.C.) P[ost-]C[onviction] #1:  Counsel agreed the mental states in the jury instructions, 'without regard for' and 'reckless disregard for,' were same [sic].  Mental states to prove manslaughter or second degree murder in instruction:  jury asked judge to clarify the difference.  Said they were the same, only different context.  Counsel agreed.  Led to murder conviction!"

Petitioner claims that his trial counsel was ineffective for agreeing to the trial court's response to the jury's request for clarification of the difference in the mental states needed to convict for second degree murder versus manslaughter (ECF No. 10 at 6).  Petitioner asserts he presented this claim on direct appeal of his conviction, and reasserted it as Ground One in his Rule 3.850 motion (*id.*).

Respondent contends Petitioner procedurally defaulted this claim by failing to present it to the First DCA on appeal of the circuit court's denial of his Rule 3.850 motion; therefore, the claim is procedurally barred from federal review (ECF No. 19 at 7–10).[9]  Respondent contends that notwithstanding the procedural bar, the claim is without merit, because the state circuit court's adjudication of the claim in the Rule

---

[9] Respondent did not address Petitioner's assertion that he exhausted this claim by presenting it on direct appeal of his conviction.

3.850 proceeding was not contrary to or an unreasonable application of clearly established federal law (*id.* at 10–11).

Although Respondent is correct that Petitioner failed to appeal this issue in the Rule 3.850 proceedings, Respondent's exhaustion argument fails because Petitioner presented this ineffective assistance of trial counsel ("IATC") claim on direct appeal; indeed, it was the only claim he presented on direct appeal (Ex. I).  In Petitioner's initial brief, he argued that it was apparent on the face of the record that his trial counsel was ineffective for failing to object to, or request modification of, the trial court's answer to the jury's question (*id.*).

Ordinarily Florida law does not permit a defendant to raise a claim of ineffective assistance of trial counsel ("IATC") on direct appeal.  *See* Gore v. State, 784 So. 2d 418, 438 (Fla. 2001).  However, an exception to this rule exists where counsel's ineffectiveness is apparent on the face of the record.  *See* Blanco v. Wainwright, 507 So. 2d 1377, 1384 (Fla. 1987).

Here, Petitioner argued in his initial brief that his IATC claim was apparent on the face of the trial record (*see* Ex. I).  The State argued in its answer brief that the IATC claim was not apparent on the face of the trial record and thus not cognizable; however, the State also addressed the merits of the IATC claim (Ex. J).  The First DCA affirmed the judgment of conviction without written opinion, thus giving no

indication that it resolved the claim on procedural grounds instead of on the merits (Ex. K).  Based upon this record, the undersigned concludes that Petitioner satisfied the federal exhaustion requirement with regard to Ground Two.  The undersigned further concludes that the First DCA adjudicated the merits of the IATC claim.  *See* Richter, 562 U.S. at 99–100 (when a state court issues an order that summarily rejects without discussion all the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits in the absence of any indication or state-law procedural principles to the contrary).  Therefore, the court will determine whether Petitioner has demonstrated that the First DCA's adjudication of the IATC claim was contrary to or an unreasonable application of clearly established federal law.

The clearly established federal standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms."  Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial . . . were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no

'absolute rules' dictating what reasonable performance is . . . ." <u>Michael v. Crosby</u>, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting <u>Chandler</u>, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'"  <u>Id.</u> (quoting <u>Putman v. Head</u>, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high.  <u>See</u> <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  <u>Id.</u> (quoting <u>Strickland</u>, 466 U.S. at 693).  However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome.  <u>Strickland</u>, 466 U.S. at 693–94.  Instead, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Id.</u> at 694.  Indeed, it would be "contrary to" the law clearly established in <u>Strickland</u> for a state court to reject an ineffectiveness

claim for failing to prove prejudice by a preponderance of the evidence. <u>Williams v. Taylor</u>, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. <u>Strickland</u>, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

Where, as here, a state court denies relief without providing an explanation or its reasoning, the habeas petitioner must show that there was no reasonable basis for the state court's decision. *See* <u>Richter</u>, 562 U.S. at 98. The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See id.* at 102; *see also* <u>Gill</u>, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

The transcript of Petitioner's trial shows that during deliberations, the jury sent the following question to the court:  "In laws terms [sic], what is the difference between without regard for and reckless disregard for" (Ex. P at 560).  The following discussion occurred between the trial court and counsel for the State and Petitioner concerning the jury's question:

> THE COURT:  First question is this, "In laws terms [sic], what is the difference between without regard for and reckless disregard for." Let me look at the instructions, see how those are used.  (Pause)  I think the terminology "without regard for" is used in the second-degree murder element.  And the "reckless" is in culpable negligence from manslaughter.  That's a really good question.
>
> MR. SMITH [defense counsel]:  Yeah, I don't think there is an answer to it.
>
> THE COURT:  I don't think there is either.
>
> (Pause)
>
> THE COURT:  I don't think there is a difference.
>
> MR. SMITH:  You don't think there is?
>
> THE COURT:  I don't think there is a difference.  I think they are used in different contexts, that one . . . is used in the context of an unlawful killing and the other is used in the context of an act of negligence.   I think that is the distinction.   From a definitional standpoint, they are the same.  That's what I think we have, in theory.

MR. QUINTANA [for the State]:  I think what the court has to do is say we cannot define these, we cannot instruct you further in regard to the law, your question.  And answer the second question.[10]

THE COURT:  What's your feeling about it, Mr. Smith?

MR. BARNES [for the State]:  We could have somebody check into that real fast at the office.

MR. SMITH:  You're not going to find any law on it.  I tend to concur that you're bound by the instructions and we can't elaborate any further and you have to use your collective wisdom in trying to ascertain the meaning of those terms and probably leave it at that.  I could see answering that question and getting another question in response to the answer to that question.  If we start trying to parse out these definitions of "reckless" and distinguishing between the different instructions and how they are used in the different instructions—

(Pause)

THE COURT:  I'm going to give this instruction.  I'm going to give the instruction that, the terms "without regard for" and "reckless disregard for" are essentially the same, that they are used in different contexts.  That one is used in the context of an unlawful killing, that the term "without regard for" is used in the context of an unlawful killing, and the term "reckless disregard for" is used in the context of an act of negligence.  And that's as far as I'm going to go.  I realize neither side may agree with that, but I think that's the question that they are asking.

MR. SMITH:  That's fine, Judge.  If you feel like —

THE COURT:  And you're certainly welcome to put any objections to that on the record.  If you want to articulate those objections now I'll entertain that.

. . . .

---

[10] The jury asked a second question (*see* Ex. R at 560), but Petitioner's IATC claim does not concern that question.

Case No.:  5:15cv111/MW/EMT

THE COURT:  So either side want to object, or we can do it after, you can put that on the record after.

MR. SMITH:  I don't see anything objectionable.

MR. BARNES:  No objections from the state, Your Honor.

THE COURT:  Bring them back in then.

(Jury is in the courtroom)

MR. SMITH:  Let the record reflect that the jury has returned to the courtroom.  They are seated in the box and the defendant is present.

Who is the chairperson?

JUROR APPLEGATE:  (Indicating)

THE COURT:   Ms. Applegate.   These questions have been submitted to me.  The first question is "in laws [sic] terms, what is the difference between without regard for and reckless disregard for."  The answer to that question is that those two terms are essentially the same and are expressing the same thought.  The term without regard for is used in the context of the second-degree murder instruction involving an unlawful killing.  The term reckless disregard for is used in the context of negligence in the manslaughter instruction.  So I hope that helps you some.  That is as far as I can go in explaining those two terms. . . .  If you want to discuss it further and if you have further questions, you can certainly submit those to me.  But at this point that is as far as I can go . . . .  But I'm available to answer any other questions that you might have.

(Jury is out to continue deliberations)

THE COURT:  Does either the state or defense want to put on the record any objections to the clarification or answer live given to the questions that were asked?

MR. BARNES:  No objection from the state.

MR. SMITH:  No, sir.

THE COURT:  We will see if we get something back.

(Ex. P at 561–65).

Prior to the jury's question, the trial court had instructed the jury as follows with regard to the elements of the charged crime of second degree murder and the lesser included offense of manslaughter (*see* Ex. E at 522–40).

The court provided the following instructions with regard to the elements of second degree murder:

> To prove the crime of second-degree murder the state must prove the following three elements beyond a reasonable doubt.  That Michael Eberhard dead.  That the death was caused by the criminal act of Garry Allen Ulland.  And that there was an unlawful killing of Michael Eberhard by an act imminently dangerous to another and demonstrating a depraved mind <u>without regard</u> for human life.

> An "act" includes a series of related actions arising from and performed pursuant to a single design or purpose.

> An act is "imminently dangerous to another and demonstrating a depraved mind" if it is an act or series of acts that a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, and is done from ill will, hatred, spite or an evil intent, and is of such a nature that the act itself indicates an indifference to human life.

> In order to convict of second-degree murder it is not necessary for the state to prove the defendant had an intent to cause death.

(Ex. E at 524–25) (emphasis added).

The court provided the following instructions with regard to the elements of the

lesser included offense of manslaughter:

> In considering the evidence, you should consider the possibility that although the evidence may not convince you that the defendant committed the main crime of which he is accused, there may be evidence that he committed other acts that would constitute a lesser included crime. Therefore, if you decide that the main accusation has not been proved beyond a reasonable doubt you will next need to decide if the defendant is guilty of any lesser included crime.

> The lesser crime indicated in the definition of second-degree murder is manslaughter.

> To prove the lesser included crime of manslaughter the state must prove the following two elements beyond a reasonable doubt. That Michael H. Eberhard is dead, and that Garry Allen Ulland's acts caused the death of Michael Eberhard, or that the death of Michael Eberhard was caused by the culpable negligence of Garry Allen Ulland.

> However, the defendant cannot be guilty of manslaughter if the killing was either justifiable or manslaughter if the killing was either justifiable or excusable homicide.

> The killing of a human being is justifiable homicide and lawful if necessarily done while resisting an attempt to murder or commit a felony upon the defendant, or to commit a felony in any dwelling house in which the defendant was at the time of the killing.

> The killing of a human being is excusable and, therefore, lawful under any one of the following three circumstances. The killing of a human — when the killing is committed by accident and misfortune, in doing any lawful act by lawful means with ordinary caution and without any unlawful intent, or when the killing occurs by accident and

misfortune in the heat of passion upon any sudden and sufficient provocation, or when the killing is committed by accident and misfortune resulting from a sudden combat if a dangerous weapon is not used and the killing is not done in a cruel or unusual manner.

I will now define "culpable negligence" for you.  Each of you has a duty to act reasonably towards others.  If there is a violation of that duty without any conscious intent to harm, the violation is negligence. But culpable negligence is more than a failure to use ordinary care towards others.  In order for negligence to be culpable it must be gross and flagrant.  Culpable negligence is a course of conduct showing reckless disregard for human life, or of the safety of persons exposed to its dangerous effects, or such an entire want of care as to raise a presumption of a conscious indifference to the consequences or which shows wantonness or recklessness or a grossly careless disregard for the safety and welfare of the public, or such an indifference to the rights of others as is equivalent to an intentional violation of such rights.

The negligent act or omission must have been committed with an utter disregard for the safety of others.  Culpable negligence is consciously doing an act or following a course of conduct that the defendant must have known or reasonably should have known was likely to cause death or great bodily injury.

"Dangerous weapon" is any weapon that, taking into account the manner in which it is used, is likely to produce death or great bodily harm.

In order to convict of manslaughter by act, it is not necessary for the state to prove that the defendant had an intent to cause death, only an intent to commit an act that was not justified or excusable and which caused death.

If the evidence convinces you that the homicide was unlawful, you must then consider whether Garry Ulland killed Michael Eberhard in the "heat of passion."  A killing which occurs in the heat of passion does not

excuse or justify an otherwise unlawful homicide.  However, it does reduce the severity of the homicide from murder to manslaughter.

In order for the defendant to avail himself of the defense of heat of passion there must be adequate provocation sufficient to obscure the reason or dominate the volition of an ordinary, reasonable man.  As a result of the provocation, the defendant's mind must be overcome with powerful emotion, such as anger, rage, sudden resentment or terror.

If you have a reasonable doubt whether Garry Ulland killed Michael Eberhard in the heat of passion you should find him guilty of manslaughter if all of the elements of that offense have been proven.

However, if the evidence convinces you beyond a reasonable doubt that Garry Ulland did not kill Michael Eberhard in the heat of passion you should find him guilty of second-degree murder if all the elements of that offense have been proven.

(Ex. E at 525–28) (emphasis added).

Based upon the trial record, the First DCA could have reasonably concluded that Petitioner failed to satisfy the deficient performance prong of the Strickland standard.  The trial transcript demonstrates that defense counsel made a reasoned decision not to challenge the court's response to the jury's question.  Defense counsel reasoned that an attempt to parse and distinguish the definitions of "reckless" in each of the instructions might have created more confusion prompting additional questions from the jury, and that the jurors were bound by the jury instructions and should use their collective wisdom to determine the meaning of "without regard" and "reckless disregard" as those terms were used in the instructions.

Further, the First DCA could have reasonably concluded that Petitioner failed to demonstrate he was prejudiced by defense counsel's failure to object to, or request modification of, the trial court's answer to the jury's question.  The jury was clearly instructed that the crimes of second degree murder and manslaughter had different elements.  Most importantly, to convict Petitioner of second degree murder, the jury was instructed that they must find that the act committed by Petitioner was done from "ill will, hatred, spite or an evil intent," which was not required for manslaughter.  In answering the jury's question, the trial court explained that the two phrases "without regard" and "reckless disregard," while essentially the same in meaning, were used in different contexts within the instruction for each crime.  There is no indication that the jury believed, based upon the court's instructions or the court's answer to their question, that the mens rea element for the two crimes was the same.  The First DCA thus could have reasonably determined that Petitioner failed to show a reasonable probability of a different outcome at trial if defense counsel had objected to, or sought modification of, the trial court's answer to the jury's question.

Petitioner failed to demonstrate that the state court's adjudication of his IATC claim was contrary to or an unreasonable application of <u>Strickland</u>.[11]  Therefore, he is not entitled to federal habeas relief on Ground Two.

> D.    Ground Four:  "Failure of counsel (trial) to file a motion to quash the information 'alleged' [sic] filed with clerk and dismiss charges."

Petitioner alleges the State failed to file a charging document within 40 days of his arrest or within 180 days of his detention (ECF No. 10 at 10).  He also alleges he was never provided a copy of the charging document (*id.*).  Petitioner claims that defense counsel was ineffective for failing to seek dismissal of the charge on the ground that the court lacked subject matter jurisdiction due to the State's failure to timely file and serve the charging document (*id.*).  He alleges he raised this claim as Ground Four of his Rule 3.850 motion (*id.*).

Respondent argues that although Petitioner raised this claim in his Rule 3.850 motion, and although Petitioner argued in his post-conviction appellate brief that the charging document was not timely filed, this argument is insufficient to satisfy the federal exhaustion requirement (ECF No. 19 at 7).  Respondent argues that if

---

[11] Petitioner's IATC claim was also adjudicated on the merits by the state circuit court in the Rule 3.850 proceedings (*see* Ex. O at 192–97, 296–98).  Although Petitioner did not completely and properly exhaust the claim in those proceedings (because he failed to argue the issue on appeal of the circuit court's denial of the claim), the circuit court's adjudication was not contrary to or an unreasonable application of <u>Strickland</u>.  The court employed the correct legal standard (i.e., the <u>Strickland</u> standard) and did not unreasonably apply that standard in determining that Petitioner failed to satisfy the performance and prejudice prongs of the <u>Strickland</u> standard (*id.* at 295–98).

Petitioner's appellate argument qualifies as proper exhaustion, the state court did not unreasonably determine the facts or unreasonably apply <u>Strickland</u> in denying the claim (*id.* at 12).

      1.    Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

      2.    Federal Review of State Court Decision

Petitioner raised this IATC claim as Ground Four in his fourth amended Rule 3.850 motion (Ex. O at 204–06).  The state circuit court applied the correct legal standard, the <u>Strickland</u> standard, to Petitioner's IATC claim (*id.* at 295–96).  The court adjudicated Ground Four as follows:

> In ground four, the Defendant alleges that counsel was ineffective for failing to file a motion to quash the information based on the State's failure to properly file an information within the time limitations prescribed by law.  The Defendant asserts that the State failed to file an information within the time required under Rule 3.134, nor was it filed upon the expiration of the speedy trial period under Rule 3.191.  The Defendant states that the information that was allegedly filed on September 16, 2009 contains no electronic filing meter or other stamp identifying the date or the identity of the clerk who filed the document. He claims that this was not done in accordance with Rule 3.030, and thus the information was never "officially" filed.  He alleges that counsel should have moved to quash the information before trial based on these grounds, and the State could not have filed a new information due to the running of the speedy trial period.  The Defendant alleges that this error had occurred in several other cases around the same time as the Defendant, which led to a dismissal of charges against those defendants. Thus, counsel should have been on notice regarding this issue but failed

to investigate in this case.  Had counsel investigated, he would have found the same error and could have moved for dismissal, resulting in the Defendant's immediate release from custody.

The Defendant acknowledges that an information was filed in the instant case.  (*See* Information.)  In fact, he states that there was a date notation written in the upper right hand corner of his copy.  Furthermore, the record demonstrates that defense counsel and the Court were made aware of the filing of formal charges at a hearing held on September 17, 2009. (*See* Transcript of Pretrial Hearing held September 17, 2009) The Defendant's complaint is that there was no "electronic filing meter or other stamp" indicating the specific date and the identity of the clerk who file the document.  The Defendant relies on Rule 3.030 in support of his argument, which simply states that:

> Every pleading *subsequent to the initial indictment or information* on which a defendant is to be tried unless the court otherwise orders, and every order not entered in open court, every written motion unless it is one about which a hearing ex parte is authorized, and every written notice, demand, and similar paper shall be served on each party in conformity with Florida Rule of Judicial Administration 2.516; however, nothing herein shall be construed to require that a plea of not guilty shall be in writing.

Fla. R. Crim. P. 3.030 (2009) (emphasis added).  Further, Florida Rule of Judicial Administration 2.516 allows a judge's notation or a clerk's time stamp to indicate the date of filing.  It appears that the Defendant is relying on the amended rules dealing with electronic filing when he complains of no electronic filing meter.  *See In re Amendments to the Florida Rules*, 102 So. 3d 451 (Fla. 2012).  However, these rules were enacted after the Defendant had committed the instant offense, and also after he was tried and convicted for that offense.  The above cited rules from 2009 do not require electronic filing that is now found in the Florida Rules of Judicial Administration.  Further, Rule 3.030 appears to apply to every pleading filed "subsequent to the initial indictment or

information," which necessarily excludes the information or indictment from its scope.

The Defendant's argument that the information was not filed within the 40 days required under Rule 3.134 or within the 175 days of Rule 3.191 is similarly without merit.  First, Rule 3.134 does not prevent the State from filing formal charges after 40 days from a suspect's arrest; the rule only prohibits the continued custody of a Defendant that has not been formally charged.   Secondly, while the speedy trial rule does prohibit the filing of new charges after 175 days following arrest, the charge of Second Degree Murder was filed well before 175 days had elapsed.   The Defendant was arrested on August 23, 2009, (*see* First Appearance Sheet), and charges were filed at the latest by September 17, 2009.  The Defendant compares his case to several Bay County cases in which no information whatsoever was filed before the running of the speedy trial period.  However, as explained above and acknowledged by the Defendant, the information was filed in this case, although it does not contain "an electronic filing meter or other stamp identifying the date or identity of the clerk who filed the document."   The Defendant is not alleging that he never received notice of the charges filed against him, or that an information was simply never supplied in this case.  He is basing his argument upon a technicality in the new e-filing rules implemented by the Florida Supreme Court.  However, these rules do not apply, and the information in this case was sufficient to charge the Defendant with Second Degree Murder and to vest this Court with jurisdiction.  Thus, ground four is due to be denied.

(Ex. O at 301–02).  Petitioner fairly presented this claim in his initial brief on appeal

to the First DCA (Ex. S).  The appellate court affirmed the lower court's decision

without written opinion (Ex. U).

Although an ineffective assistance of counsel claim is a federal constitutional

claim which the court considers in light of the clearly established law of Strickland,

when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law."  Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984) (explaining, in the context of an ineffective assistance of appellate counsel claim, that "[o]n the one hand, the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension," but, "[o]n the other hand, the validity of the claim [counsel] failed to assert is clearly a question of state law, and we must defer to the state's construction of its own law.") (citations omitted); *see also* Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005) (holding that defense counsel cannot be deemed ineffective for failing to make a state-law-based objection when the state court has already concluded that the objection would have been overruled under state law; to conclude otherwise would require the federal habeas court to make a determination that the state court misinterpreted state law, which would violate the fundamental principle that federal habeas courts should not second-guess state courts on matters of state law); Herring v. Sec 'y Dep't of Corr., 397 F.3d 1338, 1354–55 (11th Cir. 2005) (denying federal habeas relief on ineffective assistance claim based on counsel's failure to make state law-based objection; holding that the Florida Supreme Court's conclusion that the proposed objection would have been overruled was binding and precluded federal habeas relief on the ineffective assistance claim:

"The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done . . . .  It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (alterations in original) (quoting <u>Agan v. Vaughn</u>, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Here, as in <u>Alvord</u>, <u>Callahan</u>, and <u>Herring</u>, the state court has already answered the question of whether there was a legal basis for seeking to quash or dismiss the charge based upon the State's alleged failure to timely file and serve the charging document—there was not.  This court must defer to the state court's determination of state law.  The failure of Petitioner's trial counsel to raise this issue cannot be deemed deficient performance, and Petitioner cannot show he was prejudiced by counsel's failure to raise this issue, because it had no arguable basis for success.  Therefore, Petitioner is not entitled to relief on Ground Four.

 E. <u>Ground Seventeen:  "Fundamental Error:  trial court lacked subject matter jurisdiction; charge not extant."</u>

Petitioner contends the trial court lacked subject matter to try and convict him, because the prosecutor failed to provide defense counsel with a copy of the charging document until the "charge conference" on the day of Petitioner's trial (ECF No. 10

at 55).  Petitioner asserts he presented this claim of fundamental error to the state courts in his state habeas petition filed in the First DCA, Case No. 1D12-1177 (*id.* at 55–56).  He states he then presented it as a claim of IATC in Ground Four of his Rule 3.850 motion (*id.*).

Respondent asserts that in Petitioner's habeas petition filed in the First DCA in Case No. 1D12-1177, Petitioner argued that trial counsel was ineffective for failing to move to quash the information as untimely filed (ECF No. 19 at 18–19). Respondent asserts the First DCA dismissed the habeas petition on state procedural grounds, specifically, because Petitioner was using the vehicle of habeas corpus to litigate an issue which could have been raised on direct appeal or in a post-conviction motion (*id.* at 19).  Respondent contends this federal court must honor the First DCA's procedural ruling (*id.*).  Respondent additionally contends that to the extent Petitioner is presenting an IATC claim based upon counsel's failure to seek dismissal of the charge based upon the State's alleged failure to timely file and serve the charging document, Petitioner is not entitled to relief, for the reasons discussed, *supra*, in Ground Four (*id.* at 19–20).

The state court record shows that in Petitioner's habeas petition filed in the First DCA, Case No. 1D12-1177, Petitioner asserted a claim of IATC based upon counsel's failure to file a motion to quash or dismiss the charging document on the ground that

the State failed to timely file it (Ex. L at 4–6).  Petitioner also argued that the trial court lacked subject matter to try and convict him, due to the State's alleged failure to timely file and serve a copy of the charging document (*id.* at 6–7).  The First DCA dismissed the habeas petition on the ground that under Florida law, the writ of habeas corpus could not be used to litigate issues that could have been or were raised on direct appeal or in post-conviction motions (Ex. M).

To the extent Ground Seventeen presents an IATC claim based upon counsel's failure to file a motion to quash or dismiss the charging document on the ground that the State failed to timely file and serve it, Petitioner is not entitled to federal habeas relief for the reasons previously discussed in Ground Four.

To the extent Petitioner presents a claim of trial court error based upon the court's alleged lack of subject matter jurisdiction, the First DCA's ruling—that Petitioner's claim was not properly raised in a habeas petition—constitutes an independent and adequate state law ground for denial that procedurally bars the claims from federal habeas review.  The First DCA clearly and expressly stated it was relying on a state procedural rule to resolve the federal claim (*see* Ex. X).  Further, the First DCA's decision on the procedural issue rested entirely on state law grounds and was not intertwined with an interpretation of federal law.  Additionally, the rule that a Florida prisoner may not use a state habeas petition to directly or collaterally attack

his conviction, and instead must use direct appeal or a Rule 3.850 motion, is firmly

established and consistently followed by the Florida courts.  *See* <u>Baker v. State</u>, 878

So. 2d 1236, 1245–46 (Fla. 2004).  Therefore, the claim is procedurally barred from

federal review.  *See* <u>Coleman</u>, 501 U.S. at 734–35 & n.1; <u>Caniff</u>, 269 F.3d at 1247.

Petitioner has shown that he is entitled to federal review of his claim through

any recognized exception to the procedural bar.  Therefore, the claim is procedurally

barred from federal review.

Moreover, a claim that the State failed to file and serve the charging document

within the time limits set forth in Florida's criminal procedural rules presents an issue

of purely state law.  Federal habeas relief is available to correct only constitutional

injury.  28 U.S.C. § 2254(a); <u>Swarthout v. Cooke</u>, 562 U.S. 216, 219, 131 S. Ct. 859,

178 L. Ed. 2d 732 (2011) ("The habeas statute unambiguously provides that a federal

court may issue a writ of habeas corpus to a state prisoner only on the ground that he

is in custody in violation of the Constitution or laws or treaties of the United States.")

(internal quotations and citations omitted); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67–68,

112 S. Ct. 475; 116 L. Ed. 2d 385 (1991) (holding that errors that do not infringe upon

a defendant's constitutional rights provide no basis for federal habeas corpus relief);

<u>Tejada v. Dugger</u>, 941 F.2d 1551, 1560 (11th Cir. 1991) ( "Questions of state law [and

procedure] rarely raise issues of federal constitutional significance, because '[a] state's

interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'") (quoting <u>Carrizales v. Wainwright</u>, 699 F.2d 1053 (11th Cir. 1983)).   Therefore, notwithstanding the procedural bar, Petitioner is not entitled to federal habeas relief on Ground Seventeen.

>F.    <u>Ground Eighteen: "Fundamental error:  jury instructions on self- defense in an affirmative defense cause."</u>

Petitioner alleges the standard jury instructions were altered during the charge conference at trial "from self-defense to defense of property" (ECF No. 10 at 57). Petitioner alleges he did not raise this issue on direct appeal, due to ineffective assistance of his appellate counsel ("IAAC") (*id.*).  Petitioner states he presented a claim of IAAC to the First DCA in his habeas petition filed in Case No. 1D13-4133, but the First DCA denied his claim (*id.*; *see also* ECF No. 22 at 24).

Respondent contends Petitioner's claim of error should have been properly raised on direct appeal but was not (ECF No. 19 at 20).   Respondent contends Petitioner failed to show that his procedural default was caused by IAAC, because the trial court instructed the jury on self-defense, defense of others, defense of property, and Petitioner's right to "stand his ground"; therefore, Petitioner's appellate counsel was not ineffective for failing to raise the issue on direct appeal (*id.* at 20–22).

In Florida, claims of error with respect to jury instructions are properly raised on direct appeal.  *See* <u>Pooler v. State</u>, 980 So. 2d 460 (Fla. 2008) (claim of trial court error with regard to jury instructions are properly raised on direct appeal).  Petitioner did not present a claim of error with respect to the jury instructions on direct appeal (*see* Ex. I); therefore, Petitioner must demonstrate cause for his failure to do so. Petitioner contends his procedural default was caused by ineffective assistance of appellate counsel, and that in his state habeas petition filed with the First DCA, Case No. 1D13-4133, he presented a claim of IAAC with respect to counsel's failure to raise the jury instruction issue (Ex. W).  The First DCA denied the petition on the merits (Ex. X).

The standard for evaluating a claim of ineffective assistance of appellate counsel is the standard set forth in <u>Strickland</u>.  *See* <u>Smith v. Robbins</u>, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 746 (2000) (citation omitted).  Appellate counsel who file a merits brief need not (and should not) raise every nonfrivolous claim but, rather, may select from among them in order to maximize the likelihood of success of on appeal.  *See* <u>Jones v. Barnes</u>, 463 U.S. 745, 753–54, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").  To demonstrate prejudice

under Strickland, Petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, he would have prevailed on appeal. *See* Robbins, 528 U.S. at 285.

The Eleventh Circuit has issued several decisions interpreting the Strickland standard with regard to claims of ineffective assistance of appellate counsel. Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting Alvord, 725 F.2d at 1291). Additionally, where an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits. Diaz v. Sec'y Dep't of Corrs., 402 F.3d 1136, 1142 (11th Cir. 2005); Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992); Francois v. Wainwright, 741 F.2d 1275, 1285–86 (11th Cir. 1984). Moreover, the arguments omitted from the appeal must have been significant enough to have affected the outcome of the appeal. Nyhuis, 211 F.3d at 1344 (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988)).

Here, Petitioner failed to demonstrate that appellate counsel had a meritorious basis for arguing that the trial court erred by failing to give a self-defense jury

instruction.  The trial transcript demonstrates that the jury was instructed on self-defense (Ex. E at 522–33).

Petitioner failed to show cause for the procedural default of Ground Eighteen, and prejudice resulting therefrom; therefore, he is not entitled to federal review of the claim.  Moreover, the claim of trial court error is without merit, since the record demonstrates that the jury was instructed on self-defense.  Therefore, Petitioner is not entitled relief on the merits, notwithstanding the procedural bar.

> G.   Ground Nineteen:  "Unconstitutional:  Florida's amendments to Florida State Constitution of 1885 are unconstitutional."

Petitioner alleges a 1934 amendment to the Florida Constitution permits a person to be tried for a non-capital felony upon an information under oath filed by the prosecuting officer of the court, without presentment or indictment by a grand jury, *see* Fla. Const. Art. I § 15(a) (ECF No. 10 at 59–60; *see also* ECF No. 22 at 25). Petitioner additionally alleges that a 1980 amendment to the Florida Constitution denies citizens accused of non-capital crimes the opportunity for review of their convictions by the Supreme Court of Florida when the district courts of appeal render per curiam decisions without written opinion (ECF No. 10 at 59).  Petitioner contends the amendments violate the guarantees of due process and equal protection set forth in the Fifth and Fourteenth Amendments (*id.* at 59– 60).  He alleges he presented these

issues to the Supreme Court of Florida in petitions for review filed in Case Nos. SC14-187, SC15-172 and SC15-520, but the court dismissed each petition for lack of jurisdiction (*id.*).

Respondent contends Petitioner failed to properly present Ground Nineteen to the state courts; therefore, it is unexhausted and procedurally barred (ECF No. 19 at 22–23).

Petitioner presented a federal challenge to the constitutionality of both amendments to Florida's Constitution in a petition for review filed in the Supreme Court of Florida, Case No. SC15-520 (Ex. V).  On March 24, 2015, the state supreme court dismissed the petition for review for lack of jurisdiction (*id.*).  Ulland v. State, 163 So. 3d 516 (Fla. 2015).  The state supreme court cited Jenkins v. State, 385 So. 2d 1356 (Fla. 1980) as the basis for dismissal.  *Id.*  In Jenkins, the Supreme Court of Florida held that after April 1, 1980, the Supreme Court of Florida lacked jurisdiction to review per curiam decisions of the district courts of appeal rendered without opinion, when the basis for such review is an alleged conflict of that decision with a decision of another district court of appeal or of the Supreme Court of Florida.  385 So. 2d at 1359.  The state court having applied a firmly established and consistently

followed state procedural rule in denying a merits review of Petitioner's claim, the claim is procedurally barred from federal review.[12]

Petitioner failed to demonstrate cause and prejudice, or that he is entitled to a merits review of his claim through any other recognized exception to the procedural bar.  Therefore, the court will not consider the merits of Petitioner's federal challenge to the amendments to the Florida Constitution.

H.    Ground Twenty: "Cruel and unusual punishment inflicted, and excessive bail/bond required; pretrial detainee."

Petitioner alleges that while he was a pre-trial detainee in the local jail, law enforcement officers afflicted him with a "deadly bacteriam" which nearly destroyed his body, mind, soul, and spirit (ECF No. 10 at 61–62).  He alleges that when he refused to accept the State's plea offer of ten years, he was denied proper medical treatment, and the trial court increased his bond from $150,000 to $250,000 (*id.*).  Petitioner alleges that as a result of the lack of medical treatment, he was forced to testify at his trial while he was "deathly ill," "swelled up," and "dysfunctional" (*id.*).

---

[12] Review of Petitioner's petition for review filed in the Supreme Court of Florida, Case No. SC15-172, shows that Petitioner did not present a federal constitutional challenge to amendments to the Florida Constitution in that pleading (*see* Ex. DD).  Additionally, Petitioner has not shown that he fairly presented such a challenge in his petition for review filed in the Florida Supreme Court, Case No. SC14-187.  Even if he had fairly presented such a challenge in either of those cases, the state supreme court dismissed both petitions for review on firmly established and regularly followed procedural grounds, namely, lack of jurisdiction (*see* Exs. Y, DD).  *See* Ulland v. State, 134 So. 3d 452 (Fla. 2014) (Table) (citing Stallworth v. Moore, 827 So. 2d 974 (Fla. 2002)); Ulland v. State, 160 So. 3d 901 (Fla. 2015) (Table) (citing Jenkins, 385 So. 2d 1356).

Petitioner states he presented this issue to the state circuit court in a "Judicial Notice" filed on July 4, 2013 (ECF No. 10 at 61; ECF No. 10-1 at 31).

Respondent contends Petitioner's claim concerning the denial of medical treatment while Petitioner was a pre-trial detainee is bizarre, conclusory, devoid of factual support, unexhausted, and procedurally barred (ECF No. 19 at 23). Respondent contends that Petitioner's claim concerning the increase in his pre-trial bond does not present a cognizable federal habeas claim, and to the extent it presents a federal claim, it is moot because this federal court can no longer provide meaningful relief (*id.* at 23–24).

Because Petitioner was convicted and is no longer being detained under bond, his claim regarding excessive bond is moot.  *See* Murphy v. Hunt, 455 U.S. 478, 481–82, 102 S. Ct. 1181, 71 L. Ed. 2d 353 (1982) (Eighth Amendment claim regarding excessive bail became moot upon plaintiff's conviction); *see also* Parker v. Estelle, 498 F.2d 625, 628–29 (5th Cir. 1974) (habeas petitioner's Eighth Amendment claim that trial judge denied bail was moot, since petitioner was now confined by virtue of a conviction that was not tainted by this alleged illegality); United States v. Vachon, 869 F.2d 653, 656 (1st Cir. 1989) (same).

Petitioner's claim that he was denied proper medical treatment as a pre-trial detainee does not entitle him to habeas relief as such a claim challenges the conditions

of confinement, not the fact or duration of that confinement.  *See* <u>Nelson v. Campbell</u>, 541 U.S. 637, 644, 124 S. Ct. 2117, 158 L. Ed. 2d 924 (2004); *see also* <u>Farrow v. West</u>, 320 F.3d 1235, 1238 (11th Cir. 2003); <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1361 (11th Cir. 1999).  Even if Petitioner established a constitutional violation with respect to the lack of medical treatment, he would not be entitled to the relief he seeks, because release from imprisonment is not an available remedy for a conditions-of-confinement claim.  *See* <u>Gomez</u>, 899 F.2d at 1126.

To the extent Petitioner claims that the denial of medical treatment prejudiced his ability to testify at trial, Respondent is correct in arguing that Petitioner did not exhaust this claim.  A claim of error of this type should have been raised on direct appeal.  Petitioner did not raise it on direct appeal, and he has not shown cause for his failure to do so.

Further, even if Petitioner now alleged that the procedural default was caused by ineffective assistance of appellate counsel, he cannot succeed on that claim.  Although ineffective assistance of counsel which rises to the level of a constitutional deprivation can serve as cause for purposes of a procedural default analysis, the issue of ineffective assistance must first be presented as an independent state claim and exhausted in the state courts.  <u>Murray</u>, 477 U.S. at 488; <u>Orazio v. Dugger</u>, 876 F.2d 1508 (11th Cir. 1989).  In Florida, a claim of IAAC is actionable in a petition for writ

of habeas corpus filed in the appellate court to which the appeal was taken.  *See* Fla. R. App. P. 9.141(d); <u>Davis v. State</u>, 875 So. 2d 359, 372 (Fla. 2003).  Here, Petitioner filed a habeas petition in the First DCA alleging IAAC (Ex. W); however, he did not present a claim of IAAC based upon counsel's failure to raise a claim concerning the denial of medical treatment.  Therefore, any such claim could not serve as cause for the procedural default of Ground Twenty.

In sum, Petitioner's claim concerning his pre-trial bond is moot.  His claim concerning the deprivation of medical treatment during his pre-conviction detention is either not cognizable, or unexhausted and procedurally barred.  Therefore, Petitioner is not entitled to federal habeas relief on Ground Twenty.

I.   <u>Ground Twenty-one:  "IAC for failing to file a motion to suppress defendant's three uncounseled custodial interrogations."</u>

Petitioner alleges that on August 23, 2009, upon opening the front entrance to his home, four uniformed Bay County Sheriff's deputies rushed through the door and handcuffed him without warning and while he was naked (ECF No. 10 at 63). Petitioner alleges one of the officers told him, "These [handcuffs] are for your own safety and good, as well as the officer's safety here." (*id.*).  Petitioner states that other than the knock on the door, the deputies made no announcement, gave no "cause" for his arrest, and did not immediately advise him of his <u>Miranda</u> rights (*id.*).  Petitioner

asserts he raised this IATC claim in Grounds Eleven and Sixteen of his Rule 3.850 motion (*id.* at 63–64).

Respondent contends that Petitioner is not entitled to relief on Ground Twenty-one for the reasons he is not entitled to relief on Ground Eleven of his Rule 3.850 motion (Ground Twelve of Petitioner's § 2254 petition), discussed *supra* (ECF No. 19 at 24).

The undersigned agrees with Respondent.  This is the same claim as Ground Twelve of Petitioner's federal petition (Ground Eleven of Petitioner's fourth amended Rule 3.850 motion).  The claim is procedurally barred for the reasons set forth *supra* in the discussion of Ground Twelve.[13]

### J.   Ground Twenty-two:  "Discovery violation of 'Record on Appeal' and post-conviction relief requests sealed in evidence vault."

Petitioner alleges that all of the exhibits admitted at trial (including photographs of the victim's body taken by the medical examiner during the autopsy and "letters written to spouse") as well as a written version of the jury instructions, were provided

---

[13]Although Petitioner asserts he presented this claim as Ground Sixteen in his fourth amended Rule 3.850 motion, the record demonstrates that he did not.  On April 2, 2013, Petitioner sought to amend his third amended Rule 3.850 motion to add additional claims, including Ground Sixteen (Ex. N at 144–63).  However, on June 18, 2013, the state circuit court issued an order striking several claims, including Ground Sixteen, as facially insufficient (*id.* at 180–81).  The court provided Petitioner thirty days to file "a complete amended rule 3.850 motion **realleging and including all grounds** the Defendant wishes this Court to consider" (*id.*).  Petitioner filed a fourth amended Rule 3.850 motion, but he did not assert Ground Sixteen in that motion (*see* Ex. O at 188–288).

to the jury during deliberations and then sealed in the clerk of court's evidence vault (ECF No. 10 at 65).   Petitioner alleges he requested that his appellate counsel supplement the record on appeal with all of the evidence in the evidence vault, but counsel failed to do so (*id.*).  Petitioner alleges he also attempted to obtain all of that evidence for submission to the state courts in support of his post-conviction applications, but his requests were denied (*id.* at 65–66).

Respondent contends that all of the photographic evidence was supplemented into the record on appeal (*see* Ex. H), and if Petitioner's appellate counsel had felt the need, he would have moved to supplement the record with anything else which could properly be considered on direct appeal (ECF No. 19 at 24–25).   Respondent contends that Petitioner's disagreement with appellate counsel's implicit conclusion that the appellate record was adequate as supplemented, does not establish ineffective assistance (*id.* at 25).

To the extent Petitioner asserts a claim of IAAC based upon appellate counsel's failure to supplement the record on appeal with all of the trial exhibits and a written copy of the jury instructions, he has failed to demonstrate deficient performance and prejudice.  The sole issue on appeal was whether trial counsel provided ineffective assistance when he agreed to the trial court's response to the jury's question regarding the definitions of "without regard for" and "reckless disregard for" as those terms

were used in the definitions of second degree murder and manslaughter (Ex. I).  The

trial transcript was included as Volumes II, III, IV, and V of the record on appeal (*see*

Ex. A, Index; *see also* Exs. B, C, D, E).  The trial transcript included the trial court's

instructions to the jury, and the discussions that occurred in relation to the jury's

question during deliberations (*see* Ex. E at 522–45).  Petitioner failed to demonstrate

that the autopsy photographs, "letters written to spouse," and any written version of

the jury instructions were relevant to the issue presented on appeal.  Therefore,

appellate counsel's failure to supplement the record with those items was neither

deficient nor prejudicial.

To the extent Petitioner claims that he was denied discovery in the Rule 3.850

proceeding or any other collateral proceeding, his claim should be denied for the

reasons previously discussed in Ground One.

V.      CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he

district court must issue or deny a certificate of appealability when it enters a final

order adverse to the applicant," and if a certificate is issued "the court must state the

specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."

A timely notice of appeal must still be filed, even if the court issues a certificate of

appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of  new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the amended petition for writ of habeas corpus (ECF No. 10) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 26th day of April 2016.


_/s/ Elizabeth M. Timothy_
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.